WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Emily J. P.,<br>Plaintiff,<br>v.<br>Commissioner of Social Security Administration,<br>Defendant. | No. CV-25-02136-PHX-SHD<br>**ORDER** |

Claimant Emily J. P. ("Claimant")[1] seeks review of the Social Security Administration Commissioner's ("SSA" or "Commissioner") final decision denying her disability insurance benefits under Title II of the Social Security Act. For the reasons set forth below, the Administrative Law Judge's ("ALJ") decision is **affirmed**.

## I. BACKGROUND

### A. Factual Overview

Claimant was 43 years old on the alleged disability onset date of March 16, 2020. (Administrative Record ("AR") 115.) She has at least a high school education and has past relevant work as an advertising sales representative, travel agent, and display manager, which are skilled jobs performed at the light, sedentary, and light exertional levels, respectively. (AR 114–15.) On June 3, 2021, Claimant protectively filed a Title II application for a period of disability and disability insurance benefits. (AR 100.) The claim was initially denied on March 17, 2022, and upon reconsideration on June 9, 2023.

[1] As a matter of practice, Claimant is referred to as such and, at most, by her first name and last initial to protect her privacy.

(*Id.*) A telephonic hearing was held on May 2, 2024. (*Id.*) The ALJ issued an unfavorable decision on June 6, 2024. (AR 116.) The Appeals Council denied Claimant's request for review on May 21, 2025. (AR 1–4.) Claimant then appealed. (Doc. 1.)

**B. The SSA's Five-Step Evaluation Process**

To qualify for Social Security Disability Insurance benefits, a claimant must show that she "is under a disability." 42 U.S.C. § 423(a)(1)(E). To be "under a disability," the claimant must be unable to engage in "substantial gainful activity" due to "any medically determinable physical or mental impairment." *Id.* § 423(d)(1)(A). The impairment must be of such severity that the claimant cannot do her previous work or any other substantial gainful work within the national economy. *Id.* § 423(d)(2)(A). The SSA has created a five-step sequential evaluation process for determining whether an individual is disabled. *See* 20 C.F.R. § 404.1520(a)(1). The steps are followed in order, and each step is potentially dispositive. *See id.* § 404.1520(a)(4).

At Step One, the ALJ determines whether the claimant is engaging in "substantial gainful activity." *Id.* § 404.1520(a)(4)(i). "Substantial gainful activity" is work activity that is (1) "substantial," i.e., doing "significant physical or mental activities"; and (2) "gainful," i.e., usually done "for pay or profit." 20 C.F.R. § 404.1572(a)–(b). If the claimant is engaging in substantial gainful work activity, the ALJ will find the claimant is not disabled. *Id.* § 404.1520(a)(4)(i).

At Step Two, the ALJ determines whether the claimant has "a severe medically determinable physical or mental impairment" or severe "combination of impairments." *Id.* § 404.1520(a)(4)(ii). To be "severe," the claimant's impairment must "significantly limit" the claimant's "physical or mental ability to do basic work activities." *Id.* § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the ALJ will find the claimant is not disabled. *Id.* § 404.1520(a)(4)(ii).

At Step Three, the ALJ determines whether the claimant's impairment(s) "meets or equals" an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id.*

§ 404.1520(a)(4)(iii). If so, the ALJ will find the claimant is disabled, but if not, the ALJ must assess the claimant's "residual functional capacity" ("RFC") before proceeding to Step Four. *Id.* §§ 404.1520(a)(4)(iii), (e). The claimant's RFC is her ability to perform physical and mental work activities "despite [her] limitations," based on all relevant evidence in the case record. *Id.* § 404.1545(a)(1). To determine RFC, the ALJ must consider all the claimant's impairments, including those that are not "severe," and any related symptoms that "affect what [the claimant] can do in a work setting." *Id.* §§ 404.1545(a)(1)–(2).

At Step Four, the ALJ determines whether the claimant has the RFC to perform the physical and mental demands of "[her] past relevant work." *Id.* §§ 404.1520(a)(4)(iv), (e). Past relevant work is work the claimant has done within the past fifteen years.[2] *Id.* § 404.1565. If the claimant has the RFC to perform her past relevant work, the ALJ will find the claimant is not disabled. *Id.* § 404.1520(a)(4)(iv). If the claimant cannot perform her past relevant work, the ALJ will proceed to Step Five in the sequential evaluation process.

At Step Five, the last in the sequence, the ALJ considers whether the claimant "can make an adjustment to other work," considering her RFC, age, education, and work experience. *Id.* § 404.1520(a)(4)(v). If so, the ALJ will find the claimant not disabled. *Id.* If the claimant cannot make this adjustment, the ALJ will find the opposite. *Id.*

**C. The ALJ's Application of the Factors**

Here, at Step One, the ALJ concluded that Claimant had not engaged in substantial gainful activity since March 16, 2020. (AR 102.)

At Step Two, the ALJ determined that since the alleged onset date, Claimant had severe impairments of rheumatoid arthritis, fibromyalgia, obesity, degenerative disc disease, status post C4-C6 fusion, chronic pansinusitis, and intermittent left-hand tremor. (*Id.*)

---

[2] The ALJ utilized the fifteen-year lookback period because he issued his decision before the regulation was amended to a five-year period. As discussed in Section III(E) below, this was not error.

At Step Three, the ALJ found Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404. (AR 105.) With respect to the mental impairment of adjustment disorder with depressed mood, the ALJ analyzed the four "paragraph B" criteria and found that Claimant had no limitations in (1) understanding, remembering or applying information, (3) concentrating, persisting or maintaining pace, or (4) adapting or managing oneself, and a mild limitation in (2) interacting with others. (AR 103–04.)

The ALJ then found that Claimant had the following RFC:

> [Claimant can] perform light work as defined in 20 CFR 404.1567(b) except [she] is able to frequently balance, stoop, kneel, and crouch and occasionally climb and crawl. She is able to frequently reach with the left upper extremity. She is able to frequently handle and finger. [She] must avoid concentrated exposure to extreme cold, heat, wetness, fumes, odors, dusts, gases, poor ventilation, and hazards such as unprotected heights and moving machinery.

(AR 107.)

At Step Four, the ALJ found that Claimant could perform past relevant work as an advertising sales representative, travel agent, and display manager. (AR 114.) At Step Five, based on the RFC formulation and the testimony of the vocational expert ("VE"), the ALJ alternatively found that Claimant could adjust to other work existing in significant numbers in the national economy, including storage facility rental clerk, cafeteria attendant, and mail clerk. (AR 115.) Accordingly, the ALJ concluded that Claimant was not disabled as defined in the Social Security Act from March 16, 2020, to the date of the decision. (AR 116.)

## II. LEGAL STANDARD

District courts may not set aside a final denial of disability benefits unless the ALJ's decision is "based on legal error or not supported by substantial evidence in the record." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (quoting *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003)). Substantial evidence refers to

"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)). Courts must consider the record in its entirety, "weighing both the evidence that supports and the evidence that detracts from the [ALJ's] conclusion." *Id.* (quoting *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014)).

The ALJ—not a review court—is responsible for resolving ambiguities, resolving conflicts in medical testimony, determining credibility, and drawing logical inferences from the medical record. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)); *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984). Therefore, when the evidence of record could result in more than one rational interpretation, "the ALJ's decision should be upheld." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004) ("When the evidence before the ALJ is subject to more than one rational interpretation, [courts] must defer to the ALJ's conclusion."). Further, courts may only review the reasons the ALJ provides in the disability determination; they "may not affirm the ALJ on a ground upon which he did not rely." *Garrison*, 759 F.3d at 1010. Finally, only those issues raised by the party challenging the decision are reviewed. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).

## III. DISCUSSION

Claimant argues that the ALJ committed materially harmful error by (1) finding some of Claimant's impairments non-severe, (2) improperly rejecting the medical opinion of Dr. Jasmine Sra, (3) improperly rejecting Claimant's symptom testimony, (4) improperly rejecting Claimant's husband's testimony, and (5) making findings at Steps Four and Five that were unsupported by substantial evidence. (Doc. 15.) I address each argument in turn.

### A. Severity of Claimant's Impairments

Claimant argues that the ALJ committed harmful error in failing to find that three of her conditions—myalgic encephalomyelitis/chronic fatigue syndrome ("ME/CFS"),

neuropathy, and irritable bowel syndrome ("IBS")—were "severe" at Step Two of the sequential analysis. (Doc. 15 at 7–13.) The ALJ did not commit harmful error at Step Two.

**1. Legal Standard**

An impairment is severe if it significantly limits the ability to do basic work activities. 20 C.F.R. § 404.1520(c); *see also Titles II & Xvi: Med. Impairments That Are Not Severe*, SSR 85-28 (S.S.A. 1985) (defining basic work activities). A claimant bears the burden of proving both the existence of a significant limitation and that the limitation will last at least twelve months. *See* 20 C.F.R. § 404.1520(a)(4)(ii); *id.* § 404.1509. The Ninth Circuit has stated that Step Two of the sequential analysis is a "de minimis screening device to dispose of groundless claims," *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citing *Bowen v. Yuckert*, 482 U.S. 137, 153–54 (1987)), *superseded by statute, in part, on other grounds*, 20 C.F.R. §§ 404.1592(c)(3), 416.929(c)(3), and explained that an impairment is non-severe "only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individuals [sic] ability to work,'" *id.* (quoting SSR 85-28). Any error at Step Two of the sequential analysis is harmless if the ALJ considers the symptoms associated with the alleged severe impairment in the decision, including in assessing the Claimant's RFC. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (no harmful error where the ALJ considered the symptoms posed by the alleged severe condition at Step Four of the analysis); *see also Buck v. Berryhill*, 869 F.3d 1040, 1048–49 (9th Cir. 2017) (error harmless where Step Two was resolved in the claimant's favor and the ALJ considered all impairments in assessing the RFC, whether severe or not).

**2. ME/CFS and IBS**

In his decision, the ALJ declined to find Claimant's ME/CFS or IBS to be severe impairments because Claimant did not receive "treatment other than prescribed medication for her [IBS]," (AR 103), "the medical record does not mention any specific complications associated with [ME/CFS and IBS]," (*id.*), and there was "no probative

evidence that these impairments more than minimally affect the claimant's ability to perform basic work functions, or that they caused limitations for a continuous period of twelve months or more," (*id.*).

With respect to her ME/CFS, Claimant challenges the ALJ's finding on the ground that medical records identified these diagnoses, (Doc. 15 at 9 (citing AR 48, 1682–83)), and medical records noted she had suffered from fatigue, musculoskeletal pain, and post-exertional malaise, (*id.* (citing AR 1622–23 (discussing symptoms but in context of other diagnoses), 2195 (same), 2064 (same))). But as the Commissioner notes, there is very little mention of ME/CFS in the medical record and most of Claimant's symptoms were attributed by her providers to other medical conditions, including fibromyalgia and rheumatoid arthritis. (*See* AR 1622–23, 2195, 2064.)

The mere fact that a claimant has a diagnosis does not establish either an impairment or its severity under the pertinent regulations. *See* 20 C.F.R. § 404.1521. Here, the ALJ considered the paucity of medical findings tying Claimant's symptoms to her ME/CFS diagnosis and determined that she had not met the standard for establishing a severe impairment. (AR 102–03.) That finding was supported by substantial evidence. Furthermore, even if the ALJ had erred in considering Claimant's ME/CFS as non-severe, any such error was harmless because, in formulating the RFC, the ALJ considered her symptoms that would be associated with ME/CFS. (AR 107–13 (considering evidence that Claimant "experienced fatigue, tiredness, and low energy," "took two to three naps during the day for 30 minutes to two hours," and "complained of full body pain").) *See Lewis*, 498 F.3d at 911; *Buck*, 869 F.3d at 1048–49.

As for Claimant's IBS, she argues that because the medical records reflect that she was diagnosed with IBS and suffered diarrhea over several months, she suffered a severe impairment. (Doc. 15 at 11–12 (citing AR 46, 52, 2546–47, 2558).) But Claimant never discussed diarrhea-related limitations in her testimony, (*see* AR 182–211), and did not list IBS as a work-limiting condition in her Form 3368 Disability Report, (AR 370–71). Moreover, treatment records demonstrate that the diarrhea significantly improved with

medication and food avoidance, (*see* AR 1779, 2546), which she herself acknowledges, (Doc. 15 at 11–12). On these facts, substantial evidence supported the ALJ's findings.

**3. Neuropathy**

Claimant correctly notes that the ALJ did not address her neuropathy at Step Two, (AR 102–05), and indeed did not mention neuropathy at all in his decision except to note that an August 2022 electromyography "was normal showing no evidence of generalized peripheral neuropathy," (AR 109). Notwithstanding the one test the ALJ referenced that indicated normal findings, the medical record is replete with evidence of numbness and tingling in Claimant's extremities. (*See, e.g.*, AR 1726 ("numbness on and off in her hands"), 1818 ("numbness and tingling of her hands and feet").) The ALJ erred in failing to evaluate whether Claimant's neuropathy was a severe impairment.

This error, however, was harmless given the ALJ's extensive discussion of Claimant's symptoms in his RFC analysis, including that she alleged "constant pins and needled [sic] in her fingertips [and] numbing sensation," (AR 107), that she "could not use her hands," (*id.*), that she had "shock-like, shooting, stabbing/sharp, and tingling/pins and needles," (AR 109), and "bilateral hand pain with numbness and tingling," (AR 110). Indeed, the ALJ included limitations in the RFC accounting for these symptoms by finding that Claimant could "frequently reach with the left upper extremity" and "frequently handle and finger." (AR 107.) *See Lewis*, 498 F.3d at 911; *Buck*, 869 F.3d at 1048–49.

**B. Rejected Medical Opinion**

Claimant argues that the ALJ committed harmful error by rejecting the opinion of treating physician Dr. Jasmine Sra.[3] (Doc. 15 at 13–20.) Dr. Sra completed a form

---

[3] Claimant also appears to suggest that the Appeals Council erred in failing to consider the opinion of physical therapist Sanford Goldstein, submitted after the ALJ issued his decision. (Doc. 15 at 20.) But as the Commissioner notes, the Appeals Council's reasons for denying review are not subject to review. *Luther v. Berryhill*, 891 F.3d 872, 875–76 (9th Cir. 2018) (noting that "the Appeals Council's reasoning for denying review is not considered on subsequent judicial review"). Nonetheless, I may consider "additional evidence submitted to and rejected by the Appeals Council." *Id.* at 876 (citing *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1231–32 (9th Cir. 2011)).

stating that she met with Claimant twice, on April 21, 2022 and May 4, 2022, and setting forth her opinions, including that Claimant had a "Good" prognosis, had "pain all over the body" every day and at a level of 8/10, took various medications, suffered various impairments, and could not perform low-stress jobs. (AR 1372–75.) The ALJ rejected Dr. Sra's opinions as "not persuasive." (AR 113.)[4]

**1. Legal Standard**

Under the regulations governing applications filed on or after March 27, 2017, treating or examining physician opinions are no longer entitled to deference over other medical sources. *Woods v. Kijakazi*, 32 F.4th 785, 791–92 (9th Cir. 2022). Thus, an ALJ must evaluate every medical source—treating and non-treating—based on several factors, the "most important" of which are "supportability" and "consistency." *Id.* at 791 (citations omitted). "Supportability means the extent to which a medical source supports the medical opinion by explaining the relevant objective medical evidence," and consistency "means the extent to which a medical opinion is consistent with the evidence from other medical sources and nonmedical sources in the claim." *Id.* at 791–92 (citation modified).

An ALJ "must articulate how persuasive [he or she] finds all of the medical opinions from each doctor or other source and explain how [he or she] considered the supportability and consistency factors in reaching these findings." *Id.* at 792 (citation modified). Under the current regulations, "the decision to discredit any medical opinion[] must simply be supported by substantial evidence." *Id.* at 787. Although the standard is deferential, the ALJ's explanation must nonetheless permit review; therefore, a conclusory finding is insufficient because "even if the ALJ had given facially legitimate reasons . . . , the complete lack of meaningful explanation gives this court nothing with which to assess its legitimacy." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 884 (9th Cir. 2006); *see also Lambert v. Saul*, 980 F.3d 1266, 1277–78 (9th Cir. 2020) (holding that

---

[4] In his decision, the ALJ referred to Dr. Sra as "JRM, MD" rather than Dr. Sra, likely because the signature on the opinion form was illegible and no other identifying information was provided on the form. (AR 1375.)

"boilerplate statement[s]" were insufficient and that error is not harmless where reasoning does not permit meaningful review).

**2. Supportability**

In considering the supportability of Dr. Sra's opinion, the ALJ noted that the form she used was "essentially a checkbox form and it endorsed the most significant limits in many areas without citation to objective evidence and without support in treatment notes." (AR 113.) He further noted that the opinion was contradictory in nature, giving as an example Dr. Sra's opinion that "claimant was incapable of even low stress jobs but would never be absent from work." (*Id.*)

In *Kitchen v. Kijakazi*, the Ninth Circuit confirmed that it is acceptable for an ALJ to discount "a medical opinion set forth in a checkbox form with little to no explanation." 82 F.4th 732, 740–41 (9th Cir. 2023) (citing *Ford v. Saul*, 950 F.3d 1141, 1155 (9th Cir. 2020), which held that an ALJ "may permissibly reject check-off reports that do not contain any explanation of the bases of their conclusions"); *see also Luft v. O'Malley*, 2024 WL 4144086, at *1 (9th Cir. Sept. 11, 2024) (per curiam) ("Lohmann did not adequately support her opinion. Instead, she expressed it on a check-box form without providing meaningful explanation, which undercuts her opinion's persuasive value." (citation omitted)); *Sarah B. v. Comm'r of Soc. Sec.*, 2024 WL 2832887, at *3 (W.D. Wash. June 4, 2024) (ALJ's decision to discount medical source opinion as unsupported was not error where the medical source "did not provide a rationale for her [checkbox] opinion").

Claimant disputes the ALJ's characterization of Dr. Sra's opinion as a checkbox form, arguing that she "inserted various remarks throughout the questionnaire setting forth the basis of her opinions and cited prior objective findings." (Doc. 15 at 15.) But Dr. Sra did nothing of the sort. Rather, all she did was recite diagnoses, symptoms, and impairments, without setting forth the bases for her opinions supporting those diagnoses, symptoms, and impairments. Accordingly, the ALJ did not err in his supportability analysis of Dr. Sra's checkbox form.

**3. Consistency**

As to consistency, the ALJ noted that Dr. Sra's "opinion was not consistent with the medical record, which revealed the claimant was often in no acute distress with no overt pain behaviors, unremarkable and normal gait, no restrictive range of motion, full range of motion of her neck, normal sensation, and 5/5 strength." (AR 113 (citing various records).)

Claimant first argues that the ALJ erred in his consistency analysis because he "should have exercised his duty to fully and fairly develop the record by recontacting [Dr. Sra]." (Doc. 15 at 16.) This argument is unpersuasive because an ALJ's duty to develop the record fully and fairly "is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir. 2001). Here, however, Claimant does not argue the existence of ambiguous evidence or an inadequate record, and in any event such an argument would fail because the record detailed her treatment over the period of several years, and the ALJ had access to—and considered—multiple opinions. (AR 112–13 (evaluating medical opinions from four providers other than Dr. Sra).) Under these circumstances, the ALJ had no duty to further develop the record. *See Ford*, 950 F.3d at 1156 ("Given that the ALJ had years of Ford's mental health records and multiple opinions from non-examining psychiatrists to inform her decision, this duty was not triggered.").

Claimant next argues that the ALJ improperly relied on the lack of acute distress as a basis for discounting Dr. Sra's opinion. (Doc. 15 at 16–17.) The Ninth Circuit, however, has suggested that findings of no acute distress—when coupled with other information—may form a basis to discount a medical provider's opinion. *See Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001). In *Rollins*, the Ninth Circuit explained that the doctor's description of a claimant as a "well developed, well nourished middle aged female in no acute distress" was "not the sort of description . . . one would expect to accompany a finding that [a claimant] was totally disabled." *Id.* (citation modified).

Here, as in *Rollins*, the ALJ relied on medical record evidence other than the lack of acute distress—including the lack of overt pain behaviors, unremarkable and normal gait, non-restrictive range of motion, and normal sensation—to discount Dr. Sra's opinion. Accordingly, this was not error.

Claimant next argues that the ALJ erred because the medical records he cited confirm her "diagnoses and demonstrate that despite medical management, [she] experiences ongoing symptoms related to her multiple health conditions." (Doc. 15 at 17–19.) But in discounting Dr. Sra's opinion, the ALJ did not dispute the existence of Claimant's diagnoses or symptoms, only Dr. Sra's opinions as to resulting limitations. And as to Claimant's limitations, the ALJ found that consultative examiner DO Robert Gordon's opinion was persuasive, (AR 112–13), and then cited that opinion in discounting Dr. Sra's opinion, (AR 113 (citing AR 1363–71 (DO Gordon's opinion))). Claimant does not dispute that DO Gordon's opinion is inconsistent with Dr. Sra's opinion, nor could she. (*Compare* AR 1369–71 (DO Gordon's findings), *with* AR 1372–75 (Dr. Sra's opinion).) Moreover, she does not challenge the ALJ's evaluation of DO Gordon's opinion. Her argument therefore fails. *See Woods*, 32 F.4th at 792 (inconsistency with other sources is a valid reason to discount an opinion).

Finally, Claimant relies on a functional capacity examination prepared by PT Goldstein after the ALJ issued his decision to argue that the ALJ improperly evaluated the consistency factor. (Doc. 15 at 19.) The ALJ, obviously, could not have considered this opinion, but in any event,it was inconsistent with the opinions he found persuasive or somewhat persuasive. Put another way, the ALJ's consistency analysis was supported by substantial evidence even when considering PT Goldstein's opinion.

### C. Claimant's Testimony

#### 1. Legal Standard

If the ALJ finds that a claimant "presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged," and that there is "no evidence of malingering," the ALJ may "reject

the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Revels*, 874 F.3d at 655 (citation omitted). "This is not an easy requirement to meet: The clear and convincing standard is the most demanding required in Social Security cases." *Id.* (citation omitted). "If the ALJ fails to provide specific, clear, and convincing reasons for discounting the claimant's subjective symptom testimony, then the ALJ's determination is not supported by substantial evidence." *Ferguson v. O'Malley*, 95 F.4th 1194, 1199 (9th Cir. 2024). An ALJ, however, is "not required to believe every allegation of disabling pain." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022) (quotation marks omitted). "The standard isn't whether [the] court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince." *Id.*

An ALJ may rely on objective medical evidence that is inconsistent with a claimant's symptom testimony to discount that testimony. *Id.* at 498 ("When objective medical evidence in the record is inconsistent with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony."). Likewise, an ALJ may rely on "ongoing conservative treatment and overall improvement [that] are inconsistent with [a claimant's] testimony as to the severity of her impairments." *Id.* at 500. And an ALJ may rely on a claimant's activities of daily living in evaluating their testimony. *See Trevizo v. Berryhill*, 871 F.3d 664, 682 (9th Cir. 2017) ("Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination." (citation omitted)); *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) ("Even where [a claimant's] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.").

**2. Analysis**

At the hearing, Claimant testified that she had morning hand stiffness lasting hours and difficulty brushing her teeth, (AR 197), hand pain, numbness, swelling, and redness, daily dropping of objects, and difficulty with buttons, (AR 198–99), difficulty stirring

food on the stove, (AR 202), a standing tolerance of 5 to 30 minutes and avoidance of exertion, with foot and ankle swelling worsening with time on her feet, (AR 200), and hip pain, (AR 201–02). She further testified that she was comfortable sitting for only about 10 minutes, (AR 201), needed to change positions throughout the day, (AR 202–03), had difficulty concentrating and remembering because of pain, (AR 203), and had five or less good days per month, (AR 204). The ALJ imposed some limitations in the RFC that were consistent with Claimant's symptom testimony, (*see* AR 107), but also discounted that testimony as to the severity of Claimant's symptoms based on her activities of daily living, (AR 108), inconsistent evidence in the medical record, (AR 108–11), and based on her course of treatment, (AR 111). Claimant asserts that this was error for several reasons.

First, she generally argues that the ALJ "has not specified which testimony he found not credible." (Doc. 15 at 20–21.) But the ALJ *did* describe, in significant detail, the symptoms he rejected. (*See, e.g.*, AR 108 (explaining that Claimant's activities of daily living were "inconsistent with her previous statements that she had difficulty with lifting, squatting, bending, reaching, sitting, using her hands, completing tasks, concentrating, understanding, and remembering").) He was not required to "perform a line-by-line exegesis of [Claimant's] testimony" or "draft dissertations when denying benefits." *Lambert*, 980 F.3d at 1277.

Claimant next argues that the ALJ effectively cherry-picked evidence of both normal findings from her medical records, and improvement from treatment, to discount her testimony. (Doc. 15 at 21 (arguing ALJ took "the more normal findings out of context in an attempt to discredit [Claimant]"); *id.* at 22 (arguing ALJ took "treatment notes showing minor improvements . . . out of context and failed to appreciate the overall diagnostic picture").) This argument appears to be boilerplate taken from another brief, given the use of a male pronoun to describe Claimant as someone who "has persistently severe limitations in *his* ability to perform work-related activities." (*Id.* at 22 (emphasis added).) Nonetheless, the argument fails on its merits because the ALJ did the opposite

of cherry-picking, describing Claimant's medical records and treatment in significant detail, including noting that some records supported her symptom testimony, (AR 109 (noting Claimant "at times . . . displayed typical pain behaviors including grimacing, groaning, muscle stiffness, and pain with palpation")), and that some of her pain was "chronic" despite her medication, (*id.*). And to the extent Claimant complains that the ALJ reached the wrong conclusion based on the mixed evidence in the record, I reject that argument because it is the ALJ's responsibility to resolve conflicts in the medical record, not mine. *See Andrews*, 53 F.3d at 1039.

**D. Lay Witness Testimony**

**1.** Legal Standard

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Fain v. Bisignano*, ___ F.4th ___, 2026 WL 2795427, at *5 (9th Cir. Sept. 18, 2026) (citation omitted). An ALJ who discredits a lay witness's testimony must give germane reasons, but extensive analysis is not required. *Id.* (citing *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005)). The Ninth Circuit has emphasized "that the 'germane reasons' requirement is not onerous." *Id.* at *6.

**2. Analysis**

Claimant's husband submitted a two-page written statement describing the progression of her symptoms. (AR 445–46.) He reported that he had been with Claimant since 2009 and saw her daily. He stated that Claimant previously worked multiple jobs but, years ago, began experiencing pain and exhaustion, was diagnosed with various conditions, and started treatment and medication. (*Id.*) He described a gradual decline involving longer periods in bed, daytime naps, depressed mood, withdrawal from family life and hobbies, and constant pain in her back, joints, hands, and feet. (*Id.*) He attributed her stopping work to pain, fatigue, forgetfulness, difficulty keeping a schedule, bowel problems, headaches, nausea, medication side effects, and frequent appointments. (*Id.*) He also reported that Claimant spends 8–10 hours in bed nightly with disrupted

sleep, naps 2–3 hours daily, and has difficulty standing or sitting in one position beyond about 10 minutes. (*Id.*) He further described her difficulty with chores and hand tasks, an inability to walk around the neighborhood, and a recurring nasal issue. (*Id.*) He stated that they rely on notes and calendars, that he attends her appointments when possible because she misses information, and that he asks to be copied on attorney communications because she sometimes fails to follow through on tasks. (*Id.*)

While the ALJ acknowledged that Claimant's husband's statement provided context for her challenges and corroborated the fact that she suffers pain, discomfort, and fatigue, he discounted the statement because it conflicted with objective findings showing that Claimant was often in no acute distress, with no overt pain behaviors, normal gait, unrestricted range of motion, normal sensation, and full strength, and also because it conflicted with Claimant's own function reports describing her caring for her children and dog, doing chores, driving, shopping, managing finances, attending church, and handling stress adequately, which he characterized as "high activities of daily living." (AR 113–14.)

Claimant argues that the medical record and her activities of daily living do not provide a basis for discounting her husband's statement. (Doc. 15 at 24.) But in doing so, Claimant ignores the forgiving "germane reasons" standard applicable to lay witness testimony, which the Ninth Circuit has described as "not onerous." *See Fain*, 2026 WL 2795427, at *6 (finding error because "the ALJ gave no reason, germane or otherwise"). Here, the ALJ provided germane reasons that explained his decision to discount the statement, and nothing more was required.

**E. Step Four and Step Five Findings**

Claimant argues that the ALJ erred at both Steps Four and Five of the sequential analysis. As to Step Four, she claims that the ALJ should have looked at only her prior five years of work history because on June 22, 2024—approximately two weeks after the ALJ rendered his decision—the governing regulation changed the lookback period from fifteen years to five years. (Doc. 15 at 25.) This argument fails because an ALJ's

decision must be reviewed based on the rules in effect at the time of the decision. *See Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1011 n.1 (9th Cir. 2003).

Claimant argues that the ALJ erred at Step Five because his hypothetical to the VE omitted limitations he excluded based on his allegedly improper rejection of Dr. Sra's medical opinion and discounting of her symptom testimony and her husband's statement. (Doc. 15 at 25–26.) This argument is entirely derivative of the arguments addressed and rejected above. Accordingly, it must also be rejected.

**IV. CONCLUSION**

The ALJ did not harmfully err in issuing his decision.

Accordingly,

**IT IS ORDERED** that the decision of the ALJ is **affirmed**.

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter final judgment consistent with this Order and close this case.

Dated this 28th day of September, 2026.

Honorable Sharad H. Desai
United States District Judge